ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| JUSTINO CRUZ ECHEANDÍA<br><br>Apelado<br><br>v.<br><br>ALBERTO N. BALZAC COLOM<br><br>Apelante | KLAN202500208 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm. AB2018CV00158<br><br>Sobre:<br>Declaración de Servidumbre; Injunction Preliminar y Permanente |
|---|---|---|

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 30 de abril de 2025.

Alberto N. Balzac Colom (Balzac Colom o apelante) nos solicita que revisemos una *Sentencia Sumaria* que emitió el Tribunal de Primera Instancia el 13 de diciembre de 2025. Mediante ésta, el foro primario declaró *Ha Lugar* la Demanda que interpuso Justino Cruz Echeandía (Cruz Echeandía o apelado). En consecuencia, le ordenó a Balzac Colom a remover un portón que le impedía a Cruz Echeandía el acceso a su finca y de desistir de cualquier acto que impida el acceso a la finca del demandante.

Por los fundamentos que expondremos a continuación *Confirmamos* la Sentencia apelada.

## I.

El 7 de noviembre de 2018, Justino Cruz Echeandía presentó una demanda sobre declaración de servidumbre, *injunction* preliminar y permanente contra Alberto Balzac Colom.

Número Identificador

SEN2025 _____

En síntesis, el demandante alegó que, junto a sus hermanos, el 20 de diciembre de 1980, adquirió la finca número 6,028 en el municipio de Aguas Buenas. Que esa finca fue una segregación de la finca número 918. Alegó que, durante las negociaciones de la compra, los vendedores indicaron que la finca se representaba con el número uno (1) en el Plano de Subdivisión de la Propiedad que elaboró el agrimensor José Suárez Vázquez, copia del cual le entregaron.

Aseveró en la demanda que, desde la compra en el año 1980, y durante mucho más de una década después, los compradores utilizaron el camino que se ilustra en el plano para acceder a la finca, donde había una cabaña de madera que utilizaban para pasadías familiares. Alegó que el camino llegó a ser asfaltado por autoridades gubernamentales. No obstante, adujo que en algún momento posterior al año 2000, acudió a visitar la finca y se encontró con que habían instalado un portón de madera en la entrada del camino que no le permitía el acceso a su finca. Informó que quien instaló el portón fue el Dr. Rafael Alberto Balzac Lizardi, quien luego le brindó una llave de acceso. El demandante indicó que años más tarde, acudió a la finca y encontró que habían cambiado el portón por uno de metal, y que la llave que le había entregado el doctor Balzac Lizardi ya no servía para acceder a su propiedad. Tras ello, advino en conocimiento de que la persona que mantenía el control del portón era el Lcdo. Alberto Balzac Colom, hijo de Balzac Lizardi. Indicó que realizó gestiones para comunicarse con Balzac Colom, y solamente pudo obtener su comparecencia mediante una querella al amparo de la Ley 140[1]. Sostuvo que Balzac Colom le

---

[1] Ley sobre Controversias y Estados Provisionales de Derecho, Ley Núm. 140 de 23 de julio de 1974, según enmendada.

impide el acceso a la finca de su propiedad, para la cual no existen vías alternas hábiles para acceder a esta. Indicó que Balzac Colom no tiene derecho a impedir el paso, por no ser el titular del terreno sobre el cual discurre ese camino. En atención a lo anterior, el señor Cruz Echeandía reclamó, en primer lugar, que el foro primario decretara la existencia de una servidumbre por signo aparente sobre el camino por el cual Cruz Echeandía tenía acceso a su finca. **Segundo, peticionó una orden contra el licenciado Balzac Colom para que desistiera de mantener el portón instalado en la entrada del camino en controversia, por no poseer titularidad sobre éste**.

Luego de otros trámites, el 8 de abril de 2019, Balzac Colom contestó la demanda. Allí afirmó que era cotitular de la finca número 5512 que fue segregada de la finca matriz número 918. Además, indicó que el señor Balzac Lizardi le entregó las llaves del portón al demandante debido a las intimidaciones del demandante. Expresó que la finca del demandante tiene acceso directo a un camino municipal. Asimismo, indicó que el camino que reclama el demandante dejó de existir al convertirse en vertedero clandestino y fue cerrado hace más de veinte (20) años. Además, sostuvo que el huracán Georges destruyó el camino, pero Balzac Lizardi lo reconstruyó. Aceptó que el camino estuvo asfaltado alguna vez. Informó que la escritura del demandante no establece ninguna servidumbre.

El 30 de septiembre de 2019, Balzac Colom contestó el *Primer Pliego de Interrogatorios, Requerimiento de Admisiones y de Producción de Documentos* que le sirvió la parte demandante*.* Luego de los trámites de descubrimiento de pruebas, el 8 de julio de 2024, el demandado Balzac Colom presentó una *Moción de Sentencia Sumaria*.

De igual manera, el 9 de julio de 2024, Cruz Echeandía interpuso una *Solicitud de Sentencia Sumaria de la Parte Demandante.* Incluyó como anejo seis (6) un Informe Pericial que preparó la agrimensora Ruth L. Trujillo Rodríguez, quien realizó estudio sobre la finca número 6,028 propiedad del demandante. En esta moción el demandante propuso, entre otros, los siguientes hechos como incontrovertidos:

26. El Demandado Alberto Balzac Colom no es el titular de ninguna de las fincas por las que discurre el camino de acceso a la finca del Sr. Cruz Echeandía. Anejo 1, Estudio de Título de la Finca Núm. 6029; Anejo 12, Estudio de Título de la Finca Núm. 6030; Anejo 13, Estudio de Título de la Finca Núm. 6032; Anejo 14, Estudio de Título de la Finca Núm. 6033; y Anejo 15, Estudio de Título de la Finca Núm. 6034; Anejo 10, Interrogatorio al Demandado, preguntas 8 a la 21, págs. 5 y 6; Contestaciones de Balzac Colom a Interrogatorio, contestación a preguntas 8 a 21, págs. 1 a 3.

27. La finca que alegadamente pertenece a la Sucesión del Sr. Balzac Colom es la que está al final del camino de acceso que mantiene bloqueado con el portón, y que estimó queda a media milla de la carretera La Charca. Anejo 10, Interrogatorio al Demandado, preguntas 8 a la 21, págs. 5 y 6; Contestaciones de Balzac Colom a Interrogatorio, contestación a preguntas 8 a 21, págs. 1 a 3.

28. El Demandado Balzac se negó a entregar copia de las escrituras de la finca que, alegadamente, es de su propiedad. Anejo 10, Interrogatorio al Demandado, preguntas 8 a la 21, págs. 5 y 6; Contestaciones de Balzac Colom a Interrogatorio, contestación a preguntas 8 a 21, págs. 1 a 3.

29. Durante el descubrimiento de prueba, el Demandado Balzac no entregó evidencia de autorización alguna para la instalación y cierre de la servidumbre que da acceso a la finca del Demandante. Anejo 10, Interrogatorio al Demandado, preguntas 8 a la 21, págs. 5 y 6; Contestaciones de Balzac Colom a Interrogatorio, contestación a preguntas 8 a 21, págs. 1 a 3.

El 5 de agosto de 2024, Balzac Colom presentó su *Oposición a Moción de Sentencia Sumaria.* Allí negó el párrafo 26 y aceptó los párrafos 27 al 29. Planteó afirmativamente que el demandante

no procuró la obtención de los documentos por los mecanismos procesales existentes.

Entretanto, el 4 de agosto de 2024, las partes habían rendido un *Informe Conjunto de Conferencia con Antelación al Juicio.* Allí estipularon que desde el año 1980, Cruz Echeandía era el titular de la finca número 6,028. El demandante anunció como perito a la agrimensora Ruth L. Trujillo Rodríguez, quien realizó estudio sobre la finca número 6,028. Las partes también estipularon el informe pericial.[2]

El 12 de agosto de 2024, Cruz Echeandía incoó la *Oposición del Demandante a Solicitud de Sentencia Sumaria del Demandado.*

El 13 de noviembre de 2024, se celebró una vista argumentativa en atención a las alegaciones de ambas partes en las mociones de sentencia sumaria y sus respectivas oposiciones.

Tras ello, el 13 de diciembre de 2024, el Tribunal dictó la *Sentencia Sumaria* a favor de la parte demandante*.* Allí plasmó los siguientes hechos como incontrovertidos:

1. El demandante Justino Cruz Echeandía es titular de una finca descrita en el Registro de la Propiedad como:

   Rústica: Predio de terreno radicado en el Barrio Mulas de Aguas Buenas, Puerto Rico, con una cabida superficial de CINCO CUERDAS CON NUEVE MIÉSIMAS DE OTRA (5.009 cdas.), equivalentes a DIEZ Y NUEVE MIL SETESCIENTOS OCHENTA Y OCHO METROS CON NOVENTA Y CINCO CENTÍMETROS CUADRADOS (19,688.95 M/C) en lindes: por el norte, con Quebrada Juan Asencio por el sur, con José Lacosta; por el Este; con la finca principal y camino municipal; y por el Oeste, con José Lacosta.

2. La finca del Sr. Cruz Echeandía es una segregación de la Finca Núm. 918, que pertenecía a la Sociedad que componían los matrimonios de Lorenzo López Sánchez y Lydia Reyes Díaz; Joselino Falcón y Ana

---

[2] Apéndice, pág. 27.

María Santos; y Darío Meléndez García y María Antonia Gerena.

3. En el Plano de Subdivisión (Segregación) de la Finca Núm. 918 se identifica la Finca que compró el Sr. Cruz Echeandía como la finca o el Solar Núm. 1, con una cabida de 5.009 cuerdas.

4. El Informe Pericial de la Agrimensora Ruth L. Trujillo Rodríguez, que el demandado estipuló para propósitos del Informe de Conferencia con Antelación al Juicio, explica que la carretera estatal que discurre aledaña a los solares identificados como número 6 a la 10 en el Plano de la Segregación de la finca matriz es el camino municipal conocido como La Charca, conforme la citada certificación del Municipio de Aguas Buenas.

5. El Informe Pericial de la Agrimensora Ruth L. Trujillo Rodríguez explica que el único camino existente que permite acceso a la finca del Demandante es uno que está bloqueado por un portón, ubicado a la altura del camino La Charca.

6. El único camino que permitiría acceso a la finca del Demandante, pero está bloqueado por un portón, existe desde, al menos, el año 1977, antes de que el Sr. Cruz Echeandía adquiriera la finca, según consta en el Informe Pericial estipulado por las partes.

7. Ese camino existente desde 1977 es el único que actualmente da acceso a la finca del Demandante, pero está bloqueado por un portón y, por lo tanto, la finca Demandante está enclavada porque "no cuenta con un camino de acceso".

8. El demandado Alberto Balzac reconoce que es quien mantiene el control del portón que bloquea el camino existente.

9. El Municipio de Aguas Buenas certificó que nunca se cedió a favor del Municipio el camino que tiene instalado el portón.

10. Los Solares identificados como Núm. 2, Núm. 3, Núm. 5, Núm. 6 y Núm. 7 de la finca matriz, según el Plano de Segregación, corresponden a las Fincas Núm. 6029, Núm. 6030, Núm. 6032, Núm. 6033 y Núm. 6034, respectivamente.

11. En los Estudios de Título correspondientes a las Fincas Núm. 6029 (Solar 2), Núm. 6030 (Solar 3), Núm. 6032 (Solar 5), Núm. 6033 (Solar 6) y Núm. 6034 (Solar 7) se reconoce el "camino de acceso".

12. Aun cuando el camino existente desde 1977 no concuerda exactamente con el camino identificado en el Plano de Subdivisión, en las ilustraciones del

Informe Pericial de la Agrimensora Ruth L. Trujillo Rodríguez se observa que ambos discurren por las Fincas Núm. 6029 (Solar 2), Núm. 6030 (Solar 3), Núm. 6032 (Solar 5), Núm. 6033 (Solar 6) y Núm. 6034 (Solar 7) y conectan con el camino municipal La Charca.

13. La finca identificada en el Plano de Segregación como el Solar 2, que colinda en su lado oeste con la finca del Demandante y en su lado este con el camino vecinal en controversia, aún pertenece a la Sociedad de Santos, López, Falcón y Meléndez, y está inscrita como la Finca Núm. 6,029 en el Registro de la Propiedad, folio 81 del tomo 138 de Aguas Buenas, Sección II de Caguas.

14. La finca identificada en el Plano de Segregación como el Solar 3, que colinda en su lado norte con el camino municipal que nunca se construyó, y en su lado sur, este y oeste con la finca matriz pertenece a Darío Meléndez García y su esposa Antonia Gerena Meléndez, y está inscrita como la Finca Núm. 6,030 en el Registro de la Propiedad, folio 89 del tomo 138 de Aguas Buenas, Sección II de Caguas.

15. La finca identificada en el Plano de Segregación como el Solar 6, que colinda en su lado norte con el Solar 3 y en su lado este con el camino vecinal en controversia, aún pertenece a la Sociedad de Santos, López, Falcón y Meléndez, y está inscrita como la Finca Núm. 6,033 en el Registro de la Propiedad, folio 113 del tomo 138 de Aguas Buenas, Sección II de Caguas.

16. La finca identificada en el Plano de Segregación como el Solar 5, que colinda en su lado norte con los Solares 3 y 4, y en su lado oeste con el camino vecinal en controversia, aún pertenece a la Sociedad de Santos, López, Falcón y Meléndez, y está inscrita como la Finca Núm. 6,032 en el Registro de la Propiedad, folio 105 del tomo 138 de Aguas Buenas, Sección II de Caguas.

17. La finca identificada en el Plano de Segregación como el Solar 7, que colinda en su lado norte con el Solar 5, a su lado oeste con el camino vecinal en controversia, en su sur con el camino municipal La Charca, pertenece a Juan Santos Aponte y su esposa Luz América Oyola Meléndez, está inscrita como la Finca Núm. 6,034 en el Registro de la Propiedad, folio 121 del tomo 138 de Aguas Buenas, Sección II de Caguas.

18. El demandado Balzac Colom no es el titular de ninguna de las fincas por las que discurre el camino que mantiene cerrado con el portón en controversia y que obstruye el acceso a la finca del Sr. Cruz Echeandía.

19. El Sr. Balzac Colom admitió que su finca queda, aproximadamente, a media milla de distancia del lugar en que mantiene instalado el portón y de la intersección entre el camino vecinal y el camino municipal La Charca.

20. El Sr. Balzac Colom no presentó evidencia de que cuente con autorización de agencia gubernamental o de propietarios de fincas vecinas para mantener cerrado un camino que da acceso a fincas que no le pertenecen.

21. Otro camino que existía y debía dar acceso a la finca del Demandante está identificado en el Plano de Subdivisión como "camino municipal" y discurría al norte de los Solares 1, 2, 3 y 4, sin embargo, el Informe Pericial establece que el cauce de la quebrada cercana y la falta de mantenimiento hicieron que éste desapareciera antes del año 1988.

22. Así las cosas, el Informe Pericial establece que la finca del Sr. Cruz Echeandía se encuentra actualmente enclavada, que los caminos que se identificaron en el Plano de Subdivisión actualmente son inexistentes, y que el único camino que permite acceso a ésta es el que está cerrado con un portón.

23. El Demandante y su familia utilizaron el camino que está cerrado por el portón para acceder a la finca enclavada desde la adquisición de la propiedad en 1980 hasta, por lo menos, el año 2003.

Conforme a los hechos, el foro primario evaluó el derecho aplicable. Tras ello, concluyó que Cruz Echeandía es propietario de una finca en el Barrio Mulas de Aguas Buenas. Que, al adquirir la propiedad, en el Plano de Subdivisión se identificaron dos (2) caminos que debían dar acceso a la finca del Demandante pero que actualmente son inexistentes, según el Informe Pericial que las partes estipularon. Agregó que, "de esta forma, el único acceso a la finca del Demandante es el camino que el Sr. Balzac Colom mantiene cerrado con un portón."[3] Concluyó el foro primario que, "el portón que mantiene cerrado es ilegal y tiene

---

[3] Apéndice, pág. 220.

que removerlo. El Sr. Balzac Colom no puede mantener la finca del Sr. Cruz Echeandía enclavada."[4]  El tribunal primario también se expresó en cuanto a la alegación del demandado atinente a los gastos que ha incurrido para el mantenimiento del camino.  Sobre este tema indicó que la reclamación de Balzac Colom es improcedente.   De este asunto explicó lo siguiente:

> Según establecido, el Sr. Balzac Colom admite que no es titular de ninguna de las fincas por las que discurre el camino. Por lo tanto, al mantener el portón instalado en una propiedad ajena, y prohibiendo el acceso a fincas ajenas, se ubica en la posición del poseedor de mala fe. No tiene derecho a indemnización alguna por nada que hubiera allí edificado o mantenido, si algo. No puede ser de otra forma. Enriquecimiento injusto sería hacer pagar a otros por el supuesto mantenimiento de un camino que, sin autorización alguna, reservó para su uso exclusivo durante años.[5]

En consecuencia, el Tribunal Primario declaró *Ha Lugar* la Demanda de Cruz Echeandía, únicamente en cuanto al asunto de la apertura del portón.  En consecuencia, le ordenó a Balzac Colom remover el portón ilegítimo que impedía el tránsito por el único camino que permite acceso a la finca del Demandante. Además, le ordenó a Balzac Colom a cesar y desistir de cualquier acto que impidiese el acceso a la finca del demandante.

En desacuerdo, el 30 de diciembre de 2024, Balzac Colom presentó una *Moción de Determinaciones de Hechos Adicionales, Enmiendas a Determinaciones Iniciales, Conclusiones de Derecho y Reconsideración de la Sentencia Sumaria Dictada*. Cruz Echeandía presentó su *Oposición*.

El 10 de febrero de 2025, el foro de instancia denegó la solicitud del demandado.  Aún inconforme, el 12 de marzo de

---

[4] Id.
[5] Apéndice, pág. 221.

2025, Balzac Colom interpuso el presente recurso de apelación.

En este formula los siguientes señalamientos:

**Primero:** Erró el TPI al concluir que del informe pericial estipulado surge que el camino que el demandado mantiene cerrado con un portón, es el acceso a la finca del demandante y, por tanto, reconocer una servidumbre de paso.

**Segundo:** Erró el TPI al resolver sumariamente que la finca del demandante se encuentra enclavada, sin considerar los requisitos y remedios establecidos en el artículo 500 del Código Civil y las alternativas en el informe pericial del demandante.

**Tercero:** Erró el TPI al dictar sentencia en ausencia de partes indispensables como lo son la Sucesión Balzac y los titulares registrales de los solares por los que discurre el camino en controversia.

**Cuarto:** Erró el TPI al adjudicar sumariamente que el demandado no es dueño del camino a pesar de no haberse presentado prueba en contrario.

**Quinto:** Erró el TPI al concluir que el camino de acceso que surge de los estudios de títulos es el camino en controversia.

**Sexto:** Erró el TPI al aplicar la doctrina de edificante de mala fe cuando el demandante no tiene legitimación activa para reclamarla.

El apelado presentó su *Alegato en Oposición a Apelación*.

Con el beneficio de ambos escritos, disponemos.

## II.

## A.

La sentencia sumaria es el mecanismo procesal adecuado para resolver casos en los que no es necesaria la celebración de un juicio por no existir duda sobre los hechos esenciales, contarse con toda la evidencia necesaria y solo restar la aplicación del derecho. 32 LPRA Ap. V, R. 36.3(e); Consejo de Titulares del Condominio Millennium v. Rocca Development Corp., et al, 2025 TSPR 6, 215 DPR __ (2025); BPPR v. Cable Media, 2025 TSPR 1, 215 DPR __ (2025); BPPR v. Zorrilla y otro, 2024 TSPR 62, 214 DPR __ (2024); Cruz López v. Casa Bella y otros, 213 DPR 980,

993 (2024); Lugo Montalvo v. Sol Meliá Vacation, 194 DPR 209, 225 (2015); Córdova Dexter v. Sucn. Ferraiuoli, 182 DPR 541, 555-556 (2011).

Para que proceda este mecanismo es necesario que de los documentos no controvertidos surja de que no hay una controversia real y sustancial sobre los hechos del caso. Consejo de Titulares del Condominio Millennium v. Rocca Development Corp., et al, supra; Ex Parte: Torres Pérez y otro, 2025 TSPR 5, 215 DPR __ (2025); Universal Ins. y otro v. ELA y otros, 211 DPR 455, 471 (2023); Ramos Pérez v. Univisión, 178 DPR 200, 214 (2010). Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Universal Ins. y otro v. ELA y otros, supra, pág. 472; Meléndez González et al. v M. Cuebas, 193 DPR 100, 110 (2015); Ramos Pérez v. Univisión, supra, pág. 213.

La parte que se oponga a que se dicte sentencia sumaria, deberá controvertir la prueba presentada por la parte que la solicita. Regla 36.3(b) de Procedimiento Civil, supra. La parte promovida no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que deberá contestar en forma detallada y específica, como lo hiciera la parte solicitante. BPPR v. Cable Media, supra; Bobé et al. v. UBS Financial Services, 198 DPR 6, 21 (2017); 32 LPRA Ap. V, R. 36.3(e). Al dictar sentencia sumaria el tribunal deberá analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como aquellos que obren en el expediente del tribunal. S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011). De no haber hechos materiales en controversia, el tribunal dictará sentencia sumaria siempre que proceda en

derecho. Cruz, López v. Casa Bella y otros, 213 DPR 980, 993 (2024).

Se ha pautado que el foro apelativo intermedio se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria. Consejo de Titulares del Condominio Millennium v. Rocca Development Corp., et al, supra; Ex Parte: Torres Pérez y otro, supra; BPPR v. Cable Media, supra; BPPR v. Zorrilla y otro, supra; Meléndez González et al. v. M. Cuebas, supra, pág. 118; Vera v. Dr. Bravo, 161 DPR 308, 334 (2004). A tenor con lo anterior, al revisar una determinación de primera instancia, sobre una solicitud de sentencia sumaria, como foro intermedio podemos: (1) considerar los documentos que se presentaron ante el foro primario, (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el derecho se aplicó de forma correcta. Consejo de Titulares del Condominio Millennium v. Rocca Development Corp., et al, supra; Segarra Rivera v. Int'l Shipping, et al., 208 DPR 964, 981 (2022); Meléndez González et al. v. M. Cuebas, supra, pág. 114.

**B.**

El Artículo 465 del Código Civil de 1930, vigente al momento de presentarse la presente acción, define el derecho real de servidumbre como, un gravamen impuesto sobre un bien inmueble denominado predio sirviente, a beneficio de otro perteneciente a un dueño distinto, denominado predio dominante. 31 LPRA sec. 1631; Ciudad Real v. Municipio de Vega Baja, 161 DPR 160, 171 (2004).

Uno de los tipos de servidumbres prediales lo constituyen las servidumbres de paso y estaban regidas en nuestro ordenamiento por los artículos 500 a 506 del Código Civil. 31 LPRA

secs. 1731 a la 1737.   En particular, el Artículo 500 del Código Civil, 31 LPRA sec. 1731, indicaba que,

> El propietario de una finca o heredad enclavada entre otras ajenas y sin salida a camino público, tiene derecho a exigir paso por las heredades vecinas, previa la correspondiente indemnización.   […]

De otro lado, el Artículo 503 del Código Civil, 31 LPRA sec. 1734, provee que, "adquirida una finca por venta, permuta o partición, quedare enclavada entre otras del vendedor, permutante o copartícipe, éstos están obligados a dar paso sin indemnización, salvo pacto en contrario."

La servidumbre de paso debe darse por el punto menos perjudicial al predio sirviente, y en cuanto fuere conciliable con esta regla por donde sea menor la distancia del predio dominante al camino público.   Artículo 501 del Código Civil, 31 LPRA sec. 1732.

## III.

En el primer señalamiento de error el apelante alega que incidió el foro primario al concluir que el camino en controversia provee acceso a la finca del demandante.   A esos efectos, cuestionó las determinaciones de hechos números 5, 6 y 7, que indican como sigue:

> 5. El Informe Pericial de la Agrimensora Ruth L. Trujillo Rodríguez explica que el único camino existente que permite acceso a la finca del Demandante es uno que está bloqueado por un portón, ubicado a la altura del camino La Charca.

> 6. El único camino que permitiría acceso a la finca del Demandante, pero está bloqueado por un portón, existe desde, al menos, el año 1977, antes de que el Sr. Cruz Echeandía adquiriera la finca, según consta en el Informe Pericial estipulado por las partes.

> 7. Ese camino existente desde 1977 es el único que actualmente da acceso a la finca del Demandante, pero está bloqueado por un portón y, por lo tanto, la finca Demandante está enclavada porque "no cuenta con un camino de acceso".

Por igual, cuestionó las determinaciones de hechos 21 y 22, que indican como sigue:

> 21. Otro camino que existía y debía dar acceso a la finca del Demandante está identificado en el Plano de Subdivisión como "camino municipal" y discurría al norte de los solares 1, 2, 3 y 4, sin embargo, el Informe Pericial establece que el cauce de la quebrada cercana y la falta de mantenimiento hicieron que éste desapareciera antes del año 1988.

> 22. Así las cosas, el Informe Pericial establece que la finca del Sr. Cruz Echeandía se encuentra actualmente enclavada, que los caminos que se identificaron en el Plano de Subdivisión actualmente son inexistentes, y que el único camino que permite acceso a ésta es el que está cerrado con un portón.

El apelante alega que es incorrecta la conclusión del foro primario en cuanto a que el camino existente actualmente da acceso a la finca del demandante. Indicó que, en la vista argumentativa, el planteamiento de la demandante fue que, "ese camino **conecta** con el que se distingue como camino municipal y **sí se llega a la finca del demanda[nte]**. Decir que el camino que está cerrado por el portón **no llega a la finca del demandado es incorrecto** en la medida en que ese camino que está cerrado por un portón conecta el camino que llega a la finca del demanda[nte].[6]

El apelado, por su parte, sostuvo que el informe pericial solo identificó un posible camino de acceso a la propiedad del demandante. Que este camino era el que estaba cerrado por el portón. Adujo que la única alternativa de acceso que tiene la finca del señor Cruz Echeandía es por el camino existente el cual tiene un portón ilegítimo.

Evaluamos.

---

[6] Alegato del Apelante, pág. 9, haciendo referencia a la Minuta de la Vista Argumentativa, apéndice, pág. 203.

De entrada, pautamos que la demanda contenía dos causas de acción. La primera era una declaración de servidumbre y la segunda era una petición para que se le ordenara Balzac Colom a remover el portón que le impedía acceso a Cruz Echeandía a su finca.

Durante el trámite, ambas partes presentaron sus respectivas mociones de sentencia sumaria y las oposiciones a estas. Asimismo, en el Informe de Conferencia con Antelación al Juicio, estipularon el informe pericial que rindió la agrimensora Ruth L. Trujillo Rodríguez. El día que comenzaba el juicio, el foro primario abordó, los asuntos pendientes que debía resolver en cuanto a las mociones de sentencia sumaria. Para ello, les permitió a las representantes de ambas partes, realizar las argumentaciones para sostener sus posiciones. La Lcda. Liz Arelis Cruz Maisonave, compareció en representación de la parte demandante y la Lcda. Luz Yánix Vargas Pérez, por la parte demandada. Tras ello, quedó el asunto sometido. **La segunda parte de esta demanda, que era la que se solicitaba la remoción de un portón que impedía el acceso a la propiedad, fue la que el foro primario resolvió y ahora revisamos**.

El apelante cuestionó las determinaciones de hechos 6, 7, 8 y 22, que, en síntesis, aluden a que el único camino existente que permite acceso a la finca del demandante está bloqueado por un portón. No le asiste la razón, pues esas determinaciones se sustentan con la prueba.

Al dictar la sentencia sumaria, el foro primario decretó como hechos incontrovertidos que, Cruz Echeandía es dueño de la finca, identificada con el número uno (1), en el Barrio Mulas de Aguas

Buenas, el cual fue segregado de la finca número 918.[7]  Asimismo, determinó que, "[e]l Demandante y su familia utilizaron el camino que está cerrado por el portón para acceder a la finca enclavada desde la adquisición de la propiedad en 1980 hasta, por lo menos, el año 2003."[8]  El apelante no cuestionó estos dos hechos, por tanto, quedó claro que existía un camino por el cual el demandante lograba acceso a su propiedad.

Además de lo anterior, surge del informe pericial de Ruth L. Trujillo Rodríguez, el cual fue estipulado por las partes[9], que la finca del demandante se encuentra enclavada, que el único camino para acceder a la finca está cerrado con un portón. También se indicó que el camino al norte de la finca del demandado, ya no existía.  En particular, el informe indicaba lo siguiente:

> Según nuestro análisis del plano digital y el récord catastral, identificamos dos discrepancias a dilucidar:
>
> **a. El camino al norte de las parcelas #1, #2, #3 y #4 no existe.**
>
> b. La ubicación del camino existente que atraviesa la finca matriz no concuerda con el plano de subdivisión suministrado por el cliente.[10]
>
> Más adelante se expresó en el informe lo siguiente:
>
> **Ubicación del camino existente que atraviesa la finca matriz**
>
> Realizamos un análisis de las fotos aéreas históricas para investigar si nunca existió el camino que se ilustra en el plano y el por qué la ubicación del camino existente que atraviesa la finca matriz no concuerda con el plano suministrado por el cliente. Al analizar las fotografías con detenimiento, pudimos conocer que el camino que se ilustra en el plano sí existió y se puede notar claramente en las fotos aéreas hasta el año 2006.[11]
> […]

---

[7] Sentencia, determinaciones de hechos 1-3, Apéndice, pág. 214.
[8] Sentencia, determinación de hechos número 23, Apéndice, pág. 217.
[9] Estipulado en el Informe de Conferencia con Antelación a Juicio, Apéndice pág. 27.
[10] Apéndice, pág. 99.
[11] Id.

> Sobre el camino existente que atraviesa la finca matriz, pudimos notar su existencia desde la fotografía aérea del 1977. Este camino no es ilustrado en el plano de subdivisión suministrado por el cliente. De igual forma y según la certificación, este camino tampoco fue cedido al municipio, por lo que no quedó constituido como un camino municipal.[12]
>
> **Situación actual**
>
> La finca en cuestión no cuenta con un camino de acceso.  Los caminos detallados en el plano de subdivisión de 1974 no existen.  **El camino existente-con acceso bloqueado por un portón ubicado a la altura del camino La Charca**- no se ilustra en el mencionado plano y se desconoce quién lo construyó.  Ninguno de los tres caminos ha sido cedido al municipio autónomo de Aguas Buenas, por lo que no son caminos municipales.  Ante la ausencia de un camino que brinde acceso a la propiedad de nuestro cliente, **la finca en cuestión se encuentra enclavada**.[13] (Énfasis nuestro).

Vemos entonces de la prueba pericial de campo que la finca del demandante no cuenta con un camino de acceso y que el camino existente-con acceso está bloqueado por un portón ubicado a la altura del camino La Charca.  Con ello, pudo concluir que la finca en cuestión se encuentra enclavada.[14]

Además de ello, en la vista argumentativa el tribunal de instancia indagó que, "quien es el dueño de la finca donde empieza el camino y quien mantiene esa servidumbre en la actualidad."[15] Asimismo, el foro primario informó que, "el camino en controversia es donde dice ubicación del camino existente y ausculta quien es el dueño de esa finca."[16]

Sobre este asunto, la licenciada Vargas, abogada del demandado-apelante expresó que, "el portón está en el terreno donde empieza el camino y **su representado no es titular por**

---

[12] Apéndice, pág. 101.
[13] Id.
[14] Id.
[15] Apéndice, pág. 205.
[16] Id, pág. 206.

**donde discurre el camino**. **Su representado plantó el portón allí**."[17]

Asimismo, de los anejos de la moción de sentencia sumaria que interpuso el demandante, surge de la contestación al primer pliego de interrogatorio, preguntas 8-21, que el demandado informó que, "El camino objeto de esta controversia se construyó para finales de los años 70 como acceso a varios solares segregados que se pretendían vender. Dicho camino comienza en la carretera conocida como "La Charca" y termina en el antiguo camino vecinal que daba acceso al Bo. Juan Ascencio, antes de ser construida la carretera antes mencionada."[18] De igual forma, en el interrogatorio se le solicitó al demandado la evidencia de ser el titular de la propiedad donde instaló el portón y de los permisos para esa construcción, entre otros, y no los proveyó, por presuntamente ser irrelevantes.[19] Así que no presentó prueba en contra a los hechos aquí cuestionados.

Vemos, entonces, que las determinaciones a las que arribó el foro primario no están en conflicto con la información que obra en el expediente. El hecho esencial que no está en controversia es, que existe un camino que le permite al demandante acceder a su finca, ya sea directamente o mediante la conexión con otro camino y que este camino en la actualidad está cerrado con un portón.

En la sentencia, aunque el foro primario mencionó el derecho de servidumbre, lo hizo en el contexto de que la finca del apelado estaba enclavada y un portón impedía su acceso, tal como lo indicó la perito en su informe.

---

[17] Apéndice, pág. 209.
[18] Apéndice, pág. 137.
[19] Apéndice págs. 135, 139, preguntas de la 31 a la 33 y respuestas a estas.

Para resolver esa situación, el foro primario solamente ordenó la remoción del portón que impedía el acceso a la finca del demandante. Ello, en reacción a que Balzac Colom colocó un portón en un lugar que no era de su propiedad. Se concluye que el primer y segundo error no fueron cometidos.

En el tercer y cuarto señalamiento de error, el apelante alega que el tribunal primario no podía dictar sentencia en ausencia de la Sucesión Balzac y los titulares de los solares por las cuales discurre el camino. Asimismo, alegó que no se podía determinar que el demandado no era el titular del camino, a pesar de no haberse presentado prueba en contrario. No le asiste la razón.

El apelante parte de la premisa de que la sala de instancia reconoció algún derecho de servidumbre a favor del demandante. Ello no es así. Lo que el foro primario ordenó fue la remoción de un portón que colocó el demandado, al inicio del camino, en una finca que no le pertenecía. Es decir, el foro primario actuó sobre la acción personal incoada contra el demandado por incurrir en actos que impedían el acceso al demandante a su propiedad. Por tanto, no era necesario incluir a los propietarios de las fincas por las cuales discurría el camino, ni a la Sucesión Balzac, pues ninguno de ellos colocó el portón, ni surgió de la prueba que estos impidiesen el pago del demandante. Resulta adecuada la expresión del tribunal de instancia al concluir que no hacía falta incluir otras partes indispensables toda vez que, "[a]quí se persigue un **remedio personal** en contra del Demandado, quien admite mantener el control del portón que impide el acceso a la finca del señor Cruz Echeandía. Para ello no se tiene que traer a la Sucesión a la que pertenece el Demandado y, por lo tanto,

descartamos la alegación de falta de parte indispensable."[20]   Así pues, el tercer y cuarto error no fueron cometidos.

En el quinto señalamiento, el apelante alega que las determinaciones de hechos números 11, 13, 14, 15 y 17 fueron objetadas en la oposición a la sentencia sumaria.   Estos hechos fueron los siguientes:

> 11. En los Estudios de Título correspondientes a las Fincas Núm. 6029 (Solar 2), Núm. 6030 (Solar 3), Núm. 6032 (Solar 5), Núm. 6033 (Solar 6) y Núm. 6034 (Solar 7) se reconoce el "camino de acceso".

> 13. La finca identificada en el Plano de Segregación como el Solar 2, que colinda en su lado oeste con la finca del Demandante y en su lado este con el camino vecinal en controversia, aún pertenece a la Sociedad de Santos, López, Falcón y Meléndez, y está inscrita como la Finca Núm. 6,029 en el Registro de la Propiedad, folio 81 del tomo 138 de Aguas Buenas, Sección II de Caguas.

> 14. La finca identificada en el Plano de Segregación como el Solar 3, que colinda en su lado norte con el camino municipal que nunca se construyó, y en su lado sur, este y oeste con la finca matriz pertenece a Darío Meléndez García y su esposa Antonia Gerena Meléndez, y está inscrita como la Finca Núm. 6,030 en el Registro de la Propiedad, folio 89 del tomo 138 de Aguas Buenas, Sección II de Caguas.

> 15. La finca identificada en el Plano de Segregación como el Solar 6, que colinda en su lado norte con el Solar 3 y en su lado este con el camino vecinal en controversia, aún pertenece a la Sociedad de Santos, López, Falcón y Meléndez, y está inscrita como la Finca Núm. 6,033 en el Registro de la Propiedad, folio 113 del tomo 138 de Aguas Buenas, Sección II de Caguas.

> 17. La finca identificada en el Plano de Segregación como el Solar 7, que colinda en su lado norte con el Solar 5, a su lado oeste con el camino vecinal en controversia, en su sur con el camino municipal La Charca, pertenece a Juan Santos Aponte y su esposa Luz América Oyola Meléndez, está inscrita como la Finca Núm. 6,034 en el Registro de la Propiedad, folio 121 del tomo 138 de Aguas Buenas, Sección II de Caguas.

---

[20] Apéndice, pág. 220.

Las antes mencionadas determinaciones de hechos provienen de los hechos 19, 21, 22, 23 y 25 que el demandante propuso de la moción de sentencia sumaria con la debida prueba en apoyo. Están sustentadas con los estudios de títulos que el demandante incluyó como parte de los anejos de la moción de sentencia sumaria. Igualmente, se apoyan con el Plano de Subdivisión del 27 de septiembre de 1974, el cual fue uno de los documentos que utilizó la perito al rendir su informe que las partes estipularon.

En la oposición a la sentencia sumaria, el demandado negó estos hechos, pero no los refutó con otra prueba en contrario. La mención que hizo el foro de instancia al "camino en controversia", no es un hecho esencial que invalide la determinación a la que arribó la sala de primera instancia.

En el señalamiento de error número seis (6) el apelante alegó que el demandante no es el dueño del terreno en el que Balzac construyó el camino y donde ubica el portón, por lo que, carece de legitimación para exigir la demolición de este. Sostuvo que cualquier reclamo de edificante de mala fe, tendría que hacerlo los dueños de los terrenos por los cuales discurre el camino.

El apelado, por su parte, alega que presentó una declaración jurada del señor Hernán Javier Cruz Maisonave, hijo del demandante, la cual estableció que él y su familia utilizaban el camino obstruido por el portón desde la década de 1980 hasta, como mínimo, el año 2003. De esta declaración jurada también surge que, el doctor Rafael Balzac instaló un portón y le entregó una copia de la llave del candado a su papá para que pudiesen

acceder a la finca[21].    Este hecho quedó plasmado en el inciso 23 de la Sentencia Sumaria, antes mencionado.

Por tanto, no existe controversia en que el lugar donde se ubicó el portón con un candado es el que utilizaban los demandantes para acceder a su propiedad.   Quedó claro también que el demandado fue quien colocó el portón.   De esta manera, obstruyó el acceso del demandante a su propiedad.   Esto le confiere autoridad al demandante, como propietario de una finca, a procurar como remedio que se elimine la obstrucción que le impedía el libre acceso a su propiedad.

Concluimos que la decisión del tribunal revisado de ordenar la remoción de un portón que el demandado, aquí apelante, colocó en un terreno que no es suyo y que le impedía al demandante acceder a su propiedad, es adecuada y razonable.   Esta se sustenta con la prueba que obra en el expediente y no presenta hechos medulares en controversia.

**IV.**

Por las razones antes expresadas, se confirma la Sentencia aquí apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[21] Apéndice pág. 126, párrafos 7 y 8.